554

THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. MANUEL RIEGO ZUÑIGA, Defendant and Appellant.

No. Cr-62-216.   Decided March 4, 1963.

*Rafael Toro Cubergé* for appellant.   *J. B. Fernández Badillo, Solicitor General,* and *Juan A. Faría, Assistant Solicitor General,* for the People

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

PER CURIAM.

Manuel Riego Zuñiga was accused and convicted of a violation of Art. VIII of the Vehicle and Traffic Law of Puerto Rico, consisting in that in the evening of August 21, 1961 "he was operating under the influence of intoxicating liquor" a Ford motor vehicle along Comercio Street of Mayagüez.   The Mayagüez Part of the Superior Court sentenced him to serve 30 days in jail and suspended his driver's license for a period of one year.

On appeal, the only error assigned is the following:

"The court erred in finding defendant guilty without sufficient evidence and in not giving him the benefit of reasonable doubt."

We have analyzed the transcript of the evidence sent up in this appeal from which it appears that the prosecution

evidence was sufficient to find him guilty beyond a reasonable doubt of the offense charged. It consisted of the testimony of police officer Ramón Flores Pacheco, of Dr. Jaime Retegui, of chemist Eugenio Rivera Lozada, and of Demetrio Mercado Arroyo.

From the testimony of police officer Flores Pacheco it appears that on or about August 22, 1961 a pipeline running along Comercio Street of Mayagüez was being repaired. In order to prevent the flow of traffic along the place where the work was being performed, a barrier had been placed across part of the street formed by two steel barrels and a plank across, at both ends of which two lanterns of the so-called torch or flares had been placed to call attention to the work. Around ten o'clock of the evening of that day defendant Riego Zuñiga was driving his automobile along that street and ran into the barrier knocking it off and throwing the two flares to the ground. Some nearby neighbors called the police station and this policeman arrived at the place of the accident. Upon arriving he found defendant standing near his vehicle, the front glass of which was smashed. Defendant admitted that he was the driver of the vehicle. He was conducted to the police station and from there to the hospital where Dr. Jaime Retegui took a blood sample. According to the policeman's testimony, defendant smelled "of liquor and staggered as he walked." Chemist Eugenio Rivera Lozada testified that he proceeded to make the chemical analysis of the blood sample in order to determine the alcohol content, the result of which was .17, and that after making a verification analysis it showed .16.

Witness Demetrio Mercado Arroyo testified that he lives near the place of the accident; that he was on the porch of his house and heard the impact of the automobile on the plank, and that when he looked in that direction he saw the plank and the flares or torches on the ground; he saw the broken

glass of the automobile and the defendant who was out of the car; that he saw no one around there except the light watchman who also drew near the place of the accident; that he did not see the defendant leaving the place at any moment; that he was the one he saw there until the police arrived.

Defendant testified in self-defense and his version of the occurrence is somewhat strange. He related that that evening he was coming in the car together with a man named Antonio Sepúlveda (who did not testify in the case); that Sepúlveda was operating the automobile and not he; that when the front glass broke Sepúlveda went to fetch a person in order to install another glass in the automobile at that hour; that while Sepúlveda was carrying out this errand, he got nervous and said to a young man who was around there: "Come, let's have a drink." Then they went to a *cafetín* and "had several drinks while Sepúlveda returned"; that he was there "having drinks" for about 20 or 25 minutes; that then the police arrived, asked him what was wrong and he explained what had happened. He further testified: "Then he arrested me and took me to the police station and then to have a blood sample taken. Since I did not feel drunk or groggy, I mean, intoxicated, I consented to have the blood taken."

The trial judge, of course, did not believe this story.

Although the policeman's testimony in the part relative to defendant's condition is not very strong evidence, the result of the chemical analysis and the legal presumption which it entails, which has not been challenged at all, coupled with the logical and reasonable inference to be drawn from defendant's own testimony, is sufficient to find defendant guilty.

In our opinion, the error was not committed and the judgment appealed from will be affirmed.